**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____

Sing CHAN

                 Plaintiff,                    **JURY TRIAL DEMANDED**

v.

                                        Civil Action No. 13-3639 (ENV) (VMS)

CITY OF NEW YORK,
COMMISSIONER RAYMOND KELLY, New
York City Police Department,
DEPUTY INSPECTOR BRIAN J. MAGUIRE,
New York City Police Department, 109th Precinct,
LIEUTENANT LAWRENCE LIBONATI, New York City Police
Department, 109th Precinct,
SERGEANT RICHARD FRANGIPANE, New York
City Police Department, 109th Precinct,
PO EUNHA KIM, New York City Police Department,
109th Precinct,
PO JOAN MILLER, New York City Police
Department, 109th Precinct,
XIU LAN LIN,
SHU HU CHEN,
XIANG YI CHEN,

                 Defendants.
_____


## VERIFIED AMENDED COMPLAINT

Plaintiff, Sing CHAN ("Plaintiff"), through undersigned counsel, upon information and belief, alleges as follows:

1

## INTRODUCTION

1.  This is a civil rights action brought by Plaintiff Sing Chan for relief owing to Plaintiff and arising from Defendants' tortious acts and violations of Plaintiff's constitutional and statutory rights. In particular, Plaintiff was wrongfully arrested, accused and tried for the attempted murder of his landlady and her son, among other charges. During discovery and trial, it was uncovered that various improprieties were committed by the state actor Defendants in dereliction of their duties and to Plaintiff's detriment. Plaintiff has been greatly damaged by the failure of Defendants to act in accordance with their duties under the law.

2.  Among other acts, Defendants Kim and Miller arrested Plaintiff without probable cause in violation of, *inter alia*, the Fourth Amendment of the US Constitution. Defendants Kim and Miller charged and prosecuted Plaintiff also without probable cause. Defendants Kim and Miller mishandled, misrepresented, and fabricated evidence against Plaintiff in the criminal trial. Defendants detained and caused to be detained Plaintiff awaiting trial, which ended with an acquittal on all charges against Plaintiff.

3.  Among others, Defendants City of New York and Kelly employed, directed, hired, trained, and supervised Defendants Kim and Miller, and have put in place policies, procedures and customs that violated Plaintiff's rights.

4.  Defendants Lin, Shu Hu Chen and Xiang Yi Chen physically assaulted Plaintiff and made defamatory statements against Plaintiff, resulting in physical and other injuries and damages.

5.  Plaintiff seeks compensatory and punitive damages, an award of attorneys' fees and costs, and such other relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

6.   The U.S. District Court has jurisdiction over this action under 28 U.S.C. § 1331. The claims in this action arise out of 42 U.S.C. § 1983 and the Constitution of the United States.

7.   This Court also has supplemental jurisdiction over the state constitutional and state law claims under 28 U.S.C. § 1367.

8.   Venue is proper under 28 U.S.C. § 1391(e) because the Plaintiff resides in this district and no real property is involved in this action.

## PARTIES

9.   SING CHAN, Plaintiff herein, is a resident of Long Island City, New York. He is married to Zhi Qin Dong, ("Mrs. Dong"), with whom he has two young children.

10. CITY OF NEW YORK, Defendant herein, is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. The City of New York has established and maintains the New York City Police Department ("NYPD") as a constituent department or agency in the area of law enforcement. At all relevant times herein described, Defendant hired, employed, supervised and controlled the individual Defendants Raymond Kelly, Brian Maguire, Libonati, Richard Frangipane, Eunha Kim and Joan Miller.

11. RAYMOND KELLY, Defendant herein, is the Commissioner of the NYPD, and he is sued herein in his individual and official capacity. At all relevant times herein described, Defendant was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein. At all relevant times herein described, Defendant is and was responsible for, and the chief architect of, the policies, practices and/or customs of the NYPD, a municipal agency of the City of New York. He is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD.

12. DEPUTY INSPECTOR BRIAN J. MAGUIRE, Defendant herein, is the Commanding Officer of the NYPD's 109th Precinct, and he is sued herein in his individual and official capacities. At all relevant times herein described, Defendant was an employee of the State of New York and was acting within the

scope of employment in regard to the acts alleged herein. He is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD.

13. LIEUTENANT LAWRENCE LIBONATI, Defendant herein, is a ranked officer in the NYPD's 109th Precinct, and he is sued herein in his individual and official capacities. At all relevant times herein described, Defendant was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein. He is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD.

14. EUNHA KIM, Defendant herein, is a Police Officer with the NYPD's 109th Precinct, and she is sued herein in her individual and official capacity. At all relevant times herein described, Defendant was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein.

15. JOAN MILLER, Defendant herein, is a Police Officer with the NYPD's 109th Precinct, and she is sued herein in her individual and official capacity. At all relevant times herein described, Defendant was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein.

16. SERGEANT RICHARD FRANGIPANE, Defendant herein, is a ranked officer in the NYPD's 109th Precinct, is the direct supervisor of Defendants Kim and Miller, and he is sued herein in his individual and official capacities. At all relevant times herein described, Defendant was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein. He is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD.

4

17. XIU LAN LIN, Defendant herein, is a resident of Long Island City, New York. She is Plaintiff's former landlady.

18. SHU HU CHEN, Defendant herein, is a resident of Long Island City, New York. He is Defendant Lin's son with Defendant Xiang Yi Chen.

19. XIANG YI CHEN, Defendant herein, is a resident of Long Island City, New York. He is Defendant Lin's husband.

## **FACTS**

20. On June 20, 2011, at around 5:30 PM, Zhi Qin Dong, ("Mrs. Dong"), Plaintiff's wife filed a police complaint against Plaintiff and wife's landlady, Defendant Xiu Lan Lin, for harassment. Mrs. Dong and Defendant Lin had a physical altercation inside Plaintiff's home. Plaintiff was not present, as he was at work.

21. This altercation, whereby Defendant Lin attempted to make Mrs. Dong and Plaintiff leave the premises, was caused by a dispute on unpaid rent. Defendant Lin threw a chair at Mrs. Dong, who was at the time, pregnant with the couple's second child. Mrs. Dong suffered injuries that caused her hospitalization. During this altercation, Defendant Lin also verbally threatened to harm Plaintiff, who was not present.

22. A 911 call was placed about this assault, and police officers from the 109th Precinct responded to the scene. Mrs. Dong was brought to the hospital. Defendant Lin was not arrested. Plaintiff learned about this incident and met his wife at the hospital, where she stayed overnight.

23. Some hours later, at around 2:30 AM on June 21, 2011, Plaintiff returned to his home to get clothing and supplies for his wife. Plaintiff waited until late in the evening as he was afraid of Defendant Lin and wanted to avoid her. Nonetheless, upon his return to the apartment, Defendant Lin was there with her son, Defendant Shu Hu Chen and her husband, Defendant Xiang Yi Chen.

24. Defendants Lin, Shu Hu Chen and Xiang Yi Chen attacked Plaintiff inside his home with a meat cleaver, which Defendant Lin took from Plaintiff's kitchen. Plaintiff defended himself against the attackers, and at one point was able to wrestle the cleaver away from Defendant Lin. This struggle resulted in injuries to Plaintiff as well as Defendant Lin and Defendant Shu Hu Chen, all of whom had to be taken to a hospital. Defendant Xiang Yi Chen did not sustain any injuries.

25. Defendant Eunha Kim and Defendant Joan Miller responded to the scene. Upon their arrival, Plaintiff was subdued by his attackers and was pinned down by Defendants Shu Hu Chen and Xiang Yi Chen. When asked where the weapon was, Defendants Lin, Shu Hu Chen and Xiang Yi Chen, indicated that it was in a garbage can inside the apartment.

26. Defendants Kim and Miller called for additional responders, who assisted in the arrest and processing of the bloody crime scene.

27. Defendants Kim and Miller arrested Plaintiff. Plaintiff was charged with (1) Assault in the third degree; (2) Criminal Possession of a weapon in the fourth degree; and (3) Harassment in the second degree.

28. Defendants Kim and Miller arrested Plaintiff on the word of Defendant Shu Hu Chen, who, upon cross-examination at trial, was unable to identify Plaintiff as his attacker. Defendant Shu Hu Chen also provided inconsistent testimony during trial.

29. Defendants Kim and Miller also arrested Plaintiff on the word of Defendant Lin, who also provided inconsistent testimony during trial.

30. Defendants Kim and Miller did not at any point interrogate Plaintiff in connection with their investigation.

31. Defendants Maguire, Libonati, Frangipane, Kim and Miller (collectively, "NYPD 109th Precinct Defendants") knew or reasonably should have known about the earlier incident involving Defendant Lin and Mrs. Dong.

32. The NYPD 109th Precinct Defendants took photographs of the crime scene after some objects had been moved, and the scene had been staged for photographs.

33. Defendants Kim and Miller asked Plaintiff to remove his bloody clothing and wash off blood evidence from his person prior to arrest processing. Defendants did not note Plaintiff's defensive wounds during processing.

34. Defendants Kim and Miller did not make an effort to gather accurate eyewitness statements from Plaintiff, Defendant Lin, Defendant Shu Hu Chen, Defendant Xiang Yi Chen, and other persons who were at the scene on or around the time of the incident.

35. Defendants Libonati and Frangipane were present at the scene, assisted in the arrest and processing of the crime scene, and witnessed the events at the crime scene as described herein.

36. The NYPD 109th Precinct Defendants did not investigate, arrest, charge, or prosecute Defendants Lin, Shu Hu Chen and Xiang Yi Chen in connection with the events of June 20 and 21, 2011. The NYPD 109th Precinct Defendants arrested, charged and prosecuted Plaintiff knowing and with reckless disregard to evidence to doubt the veracity of the statements upon which they relied.

37. On June 22, 2011, Plaintiff was arraigned on charges from the Criminal Complaint. Plaintiff was released on his own recognizance.

38. On or about June 22, 2011, Plaintiff retained Edgar Fankbonner to represent him in criminal proceedings, who represented him at his first arraignment.

39. Defendants Kim and Miller, cooperating with the Queens District Attorney's Office, subsequently indicted Plaintiff on the following charges: (1) Attempted murder in the second degree; (2) Assault in the first degree; two counts, (3) and (4), Assault in the second degree; and (5) Criminal possession of a weapon in the fourth degree.

40. Subsequent to the arrest, the NYPD 109th Precinct Defendants failed to make further reasonable inquiries or investigation after gathering facts from witnesses and the crime scene. Defendants failed to

get a statement from Plaintiff subsequent to the arrest, and Defendants failed to investigate, arrest, charge, or prosecute Defendants Lin, Shu Hu Chen and Xiang Yi Chen.

41. Subsequent to the arrest, the NYPD 109th Precinct Defendants continued to prosecute Plaintiff knowing and with reckless disregard to evidence to doubt the veracity of the statements upon which they relied.

42. The NYPD 109th Precinct Defendants intentionally, and/or with reckless disregard, withheld evidence negating probable cause to arrest and prosecute. Defendants did not disclose the events leading up to the June 21, 2011 altercation to the grand jury. Defendants did not disclose the irregularities that attended the investigation and processing of the crime scene.

43. The NYPD 109th Precinct Defendants intentionally, and/or with reckless disregard, presented statements and evidence known to be false, or reasonably should have been known to be false, before the grand jury and at trial.

44. On October 20, 2011, Mr. Fankbonner informed Plaintiff that he should prepare at least $ 10,000 for bail money, as the State raised the charges against him to attempted murder. On October 21, 2011, Plaintiff appeared in court, and was arrested and detained at the Vernon C. Bain Center.

45. On October 25, 2011, Plaintiff was arraigned on the charges in the Indictment. Plaintiff pleaded not guilty on all counts. Plaintiff was represented by Mr. Fankbonner and Gavin Choi, another attorney that worked with Mr. Fankbonner on Plaintiff's case.

46. On August 1, 2012, Plaintiff retained undersigned counsel.

47. On December 3, 2012, jury selection for the criminal trial commenced. Trial started on December 4, 2013, and ended on December 11, 2012. The jury returned a verdict of not guilty on all counts in the indictment.

48.  Plaintiff was released from custody on December 13, 2012.

49. Lawsuits against the NYPD and the City rose 22 percent in 2012 and nearly doubled in the past five fiscal years, rising 94 percent. Police action claims result from alleged improper police conduct, such as false arrest or imprisonment, or failure to provide police protection. From 2007 to 2011, suits against the NYPD rose from 5,707 to 8,882, while payouts doubled to $186 million.

50. The above demonstrates that it was the policy and/or custom of Defendants City and Kelly to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by Defendants City and Kelly. It also demonstrates the Defendant City and Kelly's lack of or failure to implement appropriate policy responses to repeated complaints of such violations.

## EXHAUSTION OF REMEDIES

51. As to the state law claims, on January 14, 2013, Plaintiff filed a Notice of Claim with the City of New York, alleging various constitutional violations by the New York City Police Department. This claim was timely filed, within ninety (90) days from when the claims arose.

52. As to the federal claims, exhaustion of state remedies is not a prerequisite to filing a § 1983 action. As there are no federal defendants, nor any federal claims aside from those arising under § 1983, Plaintiff was not required to exhaust remedies.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for False Arrest and False Imprisonment

53.  Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 55 as is fully set forth herein.

54. Defendants Maguire, Libonati, Frangipane, Kim and Miller (collectively, "NYPD 109th Precinct Defendants") intentionally arrested or caused to be arrested Plaintiff for the first time on June 21, 2011.

He was released on his own recognizance, and arrested once again on October 21, 2011.

55. Plaintiff was aware of and did not consent to the arrest.

56. The NYPD 109th Precinct Defendants' arrest of Plaintiff was not privileged by probable cause.

57. The NYPD 109th Precinct Defendants continued to detain Plaintiff on charges in connection with criminal proceedings commenced without probable cause.

58. The NYPD 109th Precinct Defendants arrested and continued to detain Plaintiff with reckless disregard for the facts.

59. The NYPD 109th Precinct Defendants' actions caused Plaintiff to be imprisoned for a total of 420 days, from his arrest to his release, while awaiting verdict.

60. As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Plaintiff was deprived of his Fourth and Fourteenth Amendment rights under the US Constitution.

61. As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Plaintiff sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

62. The NYPD 109th Precinct Defendants' actions were intentional, wanton, malicious, reckless and oppressive, entitling Plaintiff to an award of punitive damages.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Malicious Prosecution

63. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 64 as is fully set forth herein.

64. The NYPD 109th Precinct Defendants commenced or caused to be commenced criminal proceedings against Plaintiff in Queens Criminal Court upon filing of an indictment.

65. The NYPD 109th Precinct Defendants commenced or caused to be commenced criminal proceedings against Plaintiff without probable cause.

66. The NYPD 109th Precinct Defendants commenced or caused to be commenced criminal proceedings against Plaintiff due to a wrong and improper motive.

67. The NYPD 109th Precinct Defendants commenced or caused to be commenced criminal proceedings against Plaintiff with reckless disregard for the facts.

68. Defendants Libonati, Frangipane, Kim and Miller tampered with evidence and staged the crime scene at the time of Plaintiff's arrest.

69. Defendants Libonati, Frangipane, Kim and Miller required Plaintiff to change his clothes and to clean off blood evidence from his person prior to arrest processing.

70. The NYPD 109th Precinct Defendants did not interview Plaintiff during and subsequent to his arrest.

71. The NYPD 109th Precinct Defendants did not interview Plaintiff prior to indictment.

72. Defendants Kim and Miller did not note on the Criminal Complaint that Plaintiff also sustained injuries at the time and place of the incident.

73. The NYPD 109th Precinct Defendants misrepresented, falsified, and withheld evidence from the Queens County District Attorney's Office and from the Grand Jury.

74. At the time the criminal information was filed and the Indictment issued, the NYPD 109th Precinct Defendants did not have probable cause to have Plaintiff charged with the criminal charges.

75. The NYPD 109th Precinct Defendants' actions caused the indictment to be obtained through improper means.

76. The NYPD 109th Precinct Defendants' actions caused criminal proceedings to be continued against Plaintiff, culminating in a jury verdict.

77. Criminal proceedings were terminated in favor of Plaintiff, with the jury returning a verdict of not guilty on all charges.

78. As a direct and proximate result of the NYPD 109th Precinct Defendants ' actions, Plaintiff was

deprived of his Fourth, Fifth, Sixth and Fourteenth Amendment rights under the US Constitution.

79. As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Plaintiff sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

80. The NYPD 109th Precinct Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Plaintiff to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Deprivation of Fair Trial Rights

81. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 80 as is fully set forth herein.

82. Defendants Libonati, Frangipane, Kim and Miller maliciously tampered with evidence and staged the crime scene at the time of Plaintiff's arrest.

83. Defendants Libonati, Frangipane, Kim and Miller maliciously required Plaintiff to change his clothes and to clean off blood evidence from his person prior to arrest processing.

84. The NYPD 109th Precinct Defendants did not interview Plaintiff during and subsequent to his arrest.

85. The NYPD 109th Precinct Defendants did not interview Plaintiff prior to indictment.

86. The NYPD 109th Precinct Defendants misrepresented, falsified, and withheld evidence from the Queens County District Attorney's Office and from the Grand Jury.

87. The NYPD 109th Precinct Defendants' actions caused Plaintiff to be imprisoned for a total of 420 days, from his arrest to his release, while awaiting verdict.

88. As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Plaintiff was deprived of his Fourth, Fifth, Sixth and Fourteenth Amendment rights under the US Constitution.

89. As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Plaintiff sus-

tained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

90. The NYPD 109th Precinct Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Plaintiff to an award of punitive damages.

## FOURTH CLAIM FOR RELIEF
### New York State Law Claim for False Arrest and False Imprisonment

91. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 90 as is fully set forth herein.

92. The NYPD 109th Precinct Defendants intentionally arrested Plaintiff for the first time on June 21, 2011. He was released on his own recognizance, and arrested once again on October 21, 2011.

93. Plaintiff was aware of and did not consent to the arrest.

94. The NYPD 109th Precinct Defendants' arrest of Plaintiff was not privileged by probable cause.

95. The NYPD 109th Precinct Defendants continued to detain Plaintiff on criminal charges without probable cause.

96. The NYPD 109th Precinct Defendants arrested and continued to detain Plaintiff with reckless disregard for the facts.

97. The NYPD 109th Precinct Defendants' actions caused Plaintiff to be imprisoned for a total of 420 days, from his arrest to his release, while awaiting verdict.

98. As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Plaintiff sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

99. The NYPD 109th Precinct Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Plaintiff to an award of punitive damages.

## FIFTH CLAIM FOR RELIEF
### New York State Law Claim for Malicious Prosecution

100.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 98 as is fully set forth herein.

101.    The NYPD 109th Precinct Defendants commenced or caused to be commenced criminal proceedings against Plaintiff in Queens Criminal Court upon filing of an Indictment.

102.    The NYPD 109th Precinct Defendants commenced or caused to be commenced criminal proceedings against Plaintiff without probable cause.

103.    The NYPD 109th Precinct Defendants commenced or caused to be commenced criminal proceedings against Plaintiff due to a wrong and improper motive.

104.    The NYPD 109th Precinct Defendants commenced or caused to be commenced criminal proceedings against Plaintiff with reckless disregard for the facts.

105.    Defendants Libonati, Frangipane, Kim, and Miller tampered with evidence and staged the crime scene at the time of Plaintiff's arrest.

106.    Defendants Libonati, Frangipane, Kim, and Miller required Plaintiff to change his clothes and to clean off blood evidence from his person prior to arrest processing.

107.    The NYPD 109th Precinct Defendants did not interview Plaintiff during and subsequent to his arrest.

108.    The NYPD 109th Precinct Defendants did not interview Plaintiff prior to indictment.

109.    The NYPD 109th Precinct Defendants misrepresented, falsified, and withheld evidence from the Queens County District Attorney's Office and from the Grand Jury.

110.    At the time the criminal information was filed and the indictment issued, the NYPD 109th Precinct Defendants did not have probable cause to charge Plaintiff with the criminal charges.

111.    The NYPD 109th Precinct Defendants' actions caused the indictment to be obtained

through improper means.

112.     The NYPD 109th Precinct Defendants' actions caused criminal proceedings to be continued against Plaintiff, culminating in a jury verdict.

113.     Criminal proceedings were terminated in favor of Plaintiff, with the jury returning a verdict of not guilty on all charges.

114.     As a direct and proximate result of The NYPD 109th Precinct Defendants' actions, Plaintiff sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

115.     The NYPD 109th Precinct Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Plaintiff to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 Claim for Failure to Intervene

116.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 112 as is fully set forth herein.

117.     Defendants Libonati, Frangipane arrived at the crime scene after being summoned by Defendants Kim and Miller.

118.     Defendants Libonati and Frangipane knew or reasonably should have known that the manner by which Defendants Kim and Miller conducted the arrest were unlawful and violated Plaintiff's constitutional rights.

119.     Defendants Libonati and Frangipane failed to intervene and prevent Plaintiff's unlawful arrest, even though reasonable steps could have been taken to prevent the unlawful arrest, including preventing tampering with the crime scene, and interviewing Plaintiff in connection with the events at the scene.

120.     As a direct and proximate result of Defendants Libonati and Frangipane's actions, Plain-

tiff sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

121.    Defendants Libonati and Frangipane's acts were intentional, wanton, malicious, reckless and oppressive, entitling Plaintiff to an award of punitive damages.

**SEVENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 Municipal Liability Claim for Negligent Training,**
**Hiring, Supervision and Retention**

122.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 107 as is fully set forth herein.

123.    Defendants City, Kelly, Maguire, Libonati and Frangipane knew or reasonably should have known to a moral certainty that the officers within their supervision and control will confront, *inter alia*, a crime scene that involved getting statements from non-native English speakers; a crime scene that need to be processed and that have evidence to be collected; arrestees that need medical attention; conflicting statements from persons allegedly involved in a crime scene.

124.    Defendants City, Kelly, Maguire, Libonati and Frangipane have devised, implemented, enforced, adopted, sanctioned and ratified policies, practices and customs as to, *inter alia*, the handling and processing of a crime scene; the collection of testimonial and physical evidence at a crime scene; the treatment of arrestees in need of medical attention; and the requirements of probable cause to arrest and to prosecute.

125.    The crime scene confronted by Defendants Libonati, Frangipane, Kim and Miller presented them with difficult choices of the sort that training and supervision by Defendants City, Kelly, Maguire, Libonati and Frangipane would have made less difficult, and the wrong choices, the sort of which Defendants Libonati, Frangipane, Kim and Miller made in this case, will frequently cause the deprivation of one's constitutional rights.

126.     The New York City Police Department has a history of mishandling arrests, evidence processing, and treatment of arrestees and detainees.

127.     Defendants City, Kelly, Maguire, Libonati and Frangipane failed to properly train officers within their supervision and control as to the handling and processing of a crime scene; the collection of testimonial and physical evidence at a crime scene; the treatment of arrestees in need of medical attention; and the requirements of probable cause to arrest and to prosecute; in a manner that preserves rights protected by the Constitution.

128.     With deliberate indifference to Plaintiff's constitutional rights, Defendants City, Kelly, Maguire, Libonati and Frangipane have directly and proximately caused Plaintiff's deprivation of rights under the US Constitution by devising, implementing, enforcing, adopting, sanctioning and ratifying a policy, practice and/or custom of (a) failing to properly screen, train, and supervise NYPD officers; (b) failing to adequately monitor and discipline the NYPD and its officers; and (c) encouraging, sanctioning and failing to rectify the NYPD's constitutional abuses.

129.     The actions of Defendants City, Kelly, Maguire, Libonati and Frangipane's actions, directly and proximately caused the NYPD 109th Precinct Defendants to, *inter alia*, falsely arrest and imprison Plaintiff; maliciously prosecute Plaintiff; and deprive Plaintiff of his fair trial rights.

130.     As a direct and proximate result of Defendants City, Kelly, Maguire, Libonati and Frangipane's actions, Plaintiff was deprived of his Fourth, Fifth, Sixth and Fourteenth Amendment rights under the US Constitution.

131.     As a direct and proximate result of Defendants City, Kelly, Maguire, Libonati and Frangipane's actions, Plaintiff was deprived of his Fourth, Fifth, Sixth and Fourteenth Amendment rights under the US Constitution.

132.     As a direct and proximate result of Defendants City, Kelly, Maguire, Libonati and Frangipane's actions, Plaintiff has sustained damages (including monetary damages; physical, mental and

emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

133.  Defendants City, Kelly, Maguire, Libonati and Frangipane's acts were intentional, wanton, malicious, reckless and oppressive, entitling Plaintiff to an award of punitive damages.

## EIGHTH CLAIM FOR RELIEF
### Respondeat Superior Claim Against the City Under New York Common Law

134.  Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 119 as is fully set forth herein.

135.  The conduct of the NYPD 109th Precinct Defendants occurred while they were on duty, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants City and Kelly. As a result, Defendants City and Kelly are liable to Plaintiff under the doctrine of respondeat superior.

## NINTH CLAIM FOR RELIEF
### New York State Law Assault and Battery

136.  Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 121 as is fully set forth herein.

137.  Defendants Lin, Shu Hu Chen and Xiang Yi Chen intentionally placed Plaintiff in imminent apprehension of harmful contact by collectively intruding upon Plaintiff's home, verbally attacking Plaintiff, and brandishing a meat cleaver.

138.   Defendants Lin, Shu Hu Chen and Xiang Yi Chen intentionally attacked Plaintiff with a meat cleaver, punched and kicked him about in the torso, and bit his finger.

139.  Defendants Lin, Shu Hu Chen and Xiang Yi Chen's actions caused Plaintiff to suffer from, *inter alia*, lacerations, bruises and bodily trauma.

**TENTH CLAIM FOR RELIEF**
**New York State Law Claim for Defamation**

140.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 125 as is fully set forth herein.

141.     Defendants Lin, Shu Hu Chen and Xiang Yi Chen filed a false police report against Plaintiff, stating to Defendants Libonati, Frangipane, Kim and Miller that Plaintiff attacked them with a meat cleaver.

142.     Defendant Lin stated to Defendants Libonati, Frangipane, Kim, and Miller that Plaintiff "repeatedly hit her with a meat cleaver about her head and body."

143.     Defendant Lin stated to Defendants Libonati, Frangipane, Kim, and Miller that Plaintiff's alleged actions "caused her substantial pain, annoyance, alarm and lacerations to her cheek, arm and wrist."

144.     Defendant Shu Hu Chen stated to Defendants Libonati, Frangipane, Kim, and Miller that Plaintiff "hit him repeatedly with a meat cleaver about his head and body."

145.     Defendant Shu Hu Chen stated to Defendants Libonati, Frangipane, Kim, and Miller that Plaintiff's alleged actions "caused him substantial pain, annoyance, alarm and lacerations to his head, face and neck."

146.     Defendant Xiang Yi Chen stated to Defendants Libonati, Frangipane, Kim, and Miller that he "removed said meat cleaver from [Plaintiff's] hand and put said cleaver in the garbage."

147.     Defendants Lin, Shu Hu Chen and Xiang Yi Chen's words and actions caused criminal proceedings to be commenced and continued against Plaintiff, culminating in a trial.

148.     At trial, Defendant Lin stated, among other false accusations, that Plaintiff "Chan was the man who attacked me with the knife."

149.     At trial, Defendant Shu Hu Chen stated, among other false accusations, that Plaintiff

"Chan is using a knife to kill us" and "He cut me."

150.     At trial, Defendant Shu Hu Chen stated, among other false accusations, that "when I got out of the shower, I recognized Chan as the man attacking my family," and that "I told police Chan used cleaver to hack wife and son."

151.     As a direct and proximate result of Defendants Lin, Shu Hu Chen and Xiang Yi Chen's words and actions, Plaintiff sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

152.     Defendants Lin, Shu Hu Chen and Xiang Yi Chen's acts were intentional, wanton, malicious, reckless and oppressive, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests a Final Judgment:

a.  Awarding Plaintiff compensatory damages in amounts that are fair, just and reasonable, to be determined at trial.

b.  Awarding Plaintiff punitive damages and such other and further relief as this Court deems just, proper and equitable.

c.  Awarding Plaintiff reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

d.  Awarding Plaintiff costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988; and

e.  Awarding Plaintiff such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.


Dated:  December 17, 2013

Respectfully submitted,


___/s/ Chunyu Jean Wang_____
Chunyu Jean Wang, Esq. (CW2747)
WANG LAW OFFICE, PLLC
36-25 Main Street, 3rd Floor
Flushing, NY 11354
 (718) 353-9264
 (718) 353-2099 - facsimile
*Counsel for Plaintiff*

**VERIFICATION**

STATE OF NEW YORK     )
                                ) ss:
COUNTY OF QUEENS     )

I, Sing Chan, declare:

1. I do not speak, read or write English fluently. I do fluently speak, read and write Chinese. This verification has been translated for me from Chinese by the below translator.

2. I have personal knowledge of the above facts and am competent to testify regarding all such facts based upon my personal knowledge.

3. I am the plaintiff in the above action.

4. The foregoing complaint is true and correct, except as to matters stated on information and/or belief and as to those, I believe them to be true.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true.


                                                    __ /s/ Sing Chan_____
                                                      Sing Chan

Sworn to before me this 17th day of December 2013

/s/ Victor Manibo
Victor Manibo
Notary Public, State of New York
No. 02MA6268415
Qualified in Queens County
Commission Expires Sept. 10, 2016

---

**Certificate of Translation**

I, Sheldon Wu, am competent to translate from Chinese into English, and certify that the translation is true and accurate to the best of my abilities.


/s/ Sheldon Wu_____
Sheldon Wu
36-25 Main Street, 3rd Floor
Flushing, NY 11354